## ELEVATOR SUPPLIES CO., Inc., v. GRAHAM & NORTON CO.

District Court, D. Delaware. June 14, 1929.

No. 691.

See, also, 33 F.(2d) 146, 148.

E. Ennalls Berl (of Ward & Gray), of Wilmington, Del., and Samuel E. Darby, Jr. (of Darby & Darby), of New York City, for plaintiff.

William G. Mahaffy, of Wilmington, Del., and Clifton V. Edwards (of Edwards, Bower & Pool) and Virgil C. Kline (of Townsend & Decker), both of New York City, for defendant.

MORRIS, District Judge. Patent No. 1,-100,767 to Newbury, whose claims 16 and 17 are here in issue, relates to electric signaling apparatus for elevators wherein the signals are electric lights on the car and at the several floors of the building through which the elevator travels. By pressing a push button, a person desiring to go from one floor to another may cause the car and floor lights for the floor at which the push button mechanism has been operated to burn as the car approaches that floor. Thereby the car operator is informed of the presence of a prospective passenger at the signaling floor, and the person there awaiting a car is informed of the location and direction of movement of the approaching car. Graham & Norton Company, the defendant, here charged by Elevator Supplies Company, Inc., the owner of the patent, with infringement, showing that the general idea did not originate with Newbury, that successful devices producing the same result had been long in operation before Newbury entered the field, that defendant's mechanism is, with but a slight change in form, that of patent No. 634,220, granted to Smalley and Reiners in 1899, and that the patent in suit is a paper patent, relies mainly upon the defense of noninfringement.

Claim 17 reads thus:

"17. In an elevator signaling apparatus in combination, two cars, signals corresponding to each of the cars, circuits corresponding to each floor for operating the corresponding signals, a longitudinally movable bar corresponding to each floor controlling the signal circuits of both cars for that floor and normally rendering said signals inoperative, a passenger's-button at each floor and means controlled by said button for moving its bar to its signal-giving position, and means for restoring said bars to their normal positions in succession, said bars being grouped together by themselves, *and each of said circuits having a single normally-open break therein closable only when its corresponding bar is in the position to which it has been moved through the operation of its passenger's-button.*"

Claim 16 is the same as 17, save that it omits the words of the latter claim here italicized. Defendant takes the position, however, that, though not expressed in claim 16, the underscored words must be read into that claim by implication, and asserts that its mechanism lacks both the "longitudinally movable bar" and the "single normally-open break" of the claims. A standard, commercial mechanism, at the time of Newbury's conception, was that of Smalley and Reiners. Their apparatus and that of defendant are alike, in that they are normally inoperative. No car or floor signal lights burn, unless a push button is pressed. Even then there is no direct response, for pressure upon the button does not close the lighting circuits for the signaling floor and the car. It merely places the circuits for the car and the signaling floor in an operable condition—in a state in which they may be completed and closed by the car, or other object moved in timed relation therewith, as the car approaches the floor at which the push button has been operated.

Smalley and Reiners and the defendant bring this about by having two breaks in each of their lighting circuits. An electromagnetically operated switch closes one of these breaks when the push button is pressed. A traveler or metallic bridge, whose movements are governed by and in timed relation with those of the car, closes the other as the car approaches the signaling floor.

The push button controlled, electromagnetically operated switch employed by defendant differs, however, in form from that of Smalley and Reiners. It is in such difference that plaintiff finds encroachment upon the monopoly granted to Newbury.

The electromagnetically operated switch of Smalley and Reiners consists of a mercury pot and a movable contact rod. Dipping the rod into the mercury closes the switch. Removal of the rod from the mercury opens it. The rod is rigidly affixed at right angles to the outer end of a centrally pivoted, horizontal armature for a vertical magnet. The energization of this magnet through the automatic closing of its circuit as the car leaves the signaling floor elevates the rod, which is then locked in its normal, elevated, or inoperative position by a swinging, pivoted armature of a horizontal magnet. Pressure upon the push button closes the circuit of the horizontal magnet. Being thus energized, the horizontal magnet thereupon draws its swinging armature out of locking engagement with the rod-supporting armature of the vertical magnet, and permits the rod to drop into the mercury and close the switch. The closing of the circuit of the vertical magnet, as the car moves from the floor, again resets the rod in its elevated position. These switches or contact rods are "grouped together by themselves," as are those of Newbury and the defendant.

For the two magnets, armatures, affiliated rod, and mercury pot of Smalley and Reiners, the defendant substitutes two solenoids, one above the other, having a common core with an extension at its lower end, movable longitudinally between two contacting spring fingers constituting a part of the circuit. Part of the extension to the core is nonconducting, and the remainder conducting, material. Energization of the upper solenoid, through the closing of its circuit by pressure upon the push button, draws up the core and its extension, and brings the conducting part of the extension into contact with the spring fingers, normally resting upon the nonconducting material, thereby closing the switch. Energization of the lower solenoid, by the closing of its circuit as the car moves from the floor, draws the core and its extension downward, brings the nonconducting part of the extension between the fingers, and thus restores the switch to its open state. This switch is substantially the same as that disclosed in patent No. 509,505, granted to Wright and Kinsey in 1893. This switch controls the signal circuits for its floor for as many cars as may be desired. Plaintiff finds in defendant's longitudinally movable, pencil-like rod, constituting the extension to the core of its solenoids, the "longitudinally movable bar" of the claims in suit. Whether this contention is sound depends, of course, upon a proper construction of Newbury's claims when read in the light of his specification and the prior art.

Newbury's claims, if fairly open to another meaning, may not, of course, be given a construction enabling them to read upon the prior apparatus of Smalley and Reiners. Nor, indeed, may they be so construed as to deny to Smalley and Reiners such changes in the form of their apparatus as one skilled in the art might make. They may not, for instance, be held to deprive Smalley and Reiners of their right to swing by chain, or otherwise, their contact rod from the end of their horizontal armature instead of having it rigidly affixed thereto. Yet, for every practical purpose, a rod so supported would be as "longitudinally movable," as is the core extension of defendant to which plaintiff objects. The claims do not require a construction so comprehensive. True, Newbury's push button signals, like those of defendant and Smalley and Reiners, are delayed. Regardless of when the push button is operated, the lights in the car and the corridor respond only when the car is, or comes, within a predetermined distance from the signaling floor. But, in the accomplishment of this result, Newbury does not follow the principle of Smalley and Reiners as does the defendant. On the contrary, he makes a rather wide departure in the reorganization of his means. His "longitudinally movable bar," regardless of whether it is the electromagnetically movable rod, $r$, the locking bar, $T$, or the short projectable rod, $n$, has the function of mechanically narrowing or shortening the single gap or break in the signal light circuits, in order that it may be closed by the traveler moving in synchronism with the car. It is not a true switch. Unlike the contact rod of Smalley and Reiners and the core extension of defendant, it carries no current. At no time does it become a part of the circuit.

Finding that defendant does not use the "longitudinally movable bar" of the claims in suit, the bill of complaint must be dismissed.